UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JACQUELYN MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No. SA-05-CA-1019-XR/NN** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **COMMISSIONER OF THE SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On this date, the Court considered the final administrative decision of the Commissioner of Social Security regarding the denial of Ms. Jacquelyn Morris' claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") pursuant to the Social Security Act. After careful consideration, the decision of the Commissioner is REVERSED and Plaintiff's claim for benefits is REMANDED to the Commissioner with instructions to (1) address the weight to be given to the assessment of Dr. Bischoff, Plaintiff's treating psychiatrist; (2) rate the degree of functional limitation resulting from Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a(c); (3) record and support those functional limitation findings in accordance with 20 C.F.R. § 404.1520a(e)(2); and (4) rate the severity of Plaintiff's mental impairments, including if necessary her mental residual functioning capacity ("RFC"), in accordance with 20 C.F.R. § 404.1520a(d). Each party shall bear its own costs. The Clerk is instructed to close this case.

## I. Factual & Administrative Background

Plaintiff Jacquelyn Morris instituted this suit on October 18, 2005 in order to seek review of

1

the Commissioner's decision to deny her application for SSDI and SSI.  Morris filed her application

for benefits in April of 2002, alleging disability commencing on March 1, 1999 due to Type II

Diabetes with neuropathy in both feet and legs; depression; anxiety and a back injury with multiple

surgeries.  Tr. at 84-5.  She was denied benefits initially and on reconsideration.  The Administrative

Law Judge ("ALJ") held a hearing on December 15, 2004, at which Morris and Don R. Marth, Ph.D.,

a vocational expert, testified. The Social Security Administration Appeals Council concluded on

September 16, 2005 that no basis existed for review of the ALJ's decision.  Thus, the ALJ's decision

became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42

U.S.C. § 405(g).  Based on the record in this case, Morris fully exhausted her administrative

remedies prior to filing this action in federal court.

### A.    Evaluation process and the ALJ's findings

The ALJ issued his determination on February 1, 2005.  Regulations created by the

Commissioner require disability claims to be evaluated according to a five-step process.  20 C.F.R.

§§ 404.1520 & 416.920.  The burden of proof is on the claimant during the first four steps in this

five-part analysis.  *Legget v. Charter*, 67 F.3d 558, 566 (5th Cir. 1995).  The burden shifting that

occurs at the fifth step is irrelevant in this case because the ALJ concluded that Morris was not

disabled at step four.  Tr. at 21.  A finding that a claimant is disabled or not at any point in the

process is conclusive and terminates the Commissioner's analysis.  *Id.*

First, the ALJ must determine whether the claimant has engaged in substantial gainful

activity after the onset of her alleged disability.  The ALJ concluded that Morris had not engaged in

any gainful activity during that period.  Tr. at 21; *see* 20 C.F.R.  § 404.1520(a)(I).  The second and

third step require the ALJ to evaluate the severity of the claimant's impairments and determine

2

whether they meet or exceed an impairment listed in the regulations.  *Id.* at (a)(ii)-(iii).  The ALJ concluded that Morris' impairments were "severe," however, they did not meet or medically exceed one of the listed impairments.[1]  Fourth, the ALJ must assess the claimant's RFC and relevant work history to determine whether the claimant may still engage in her past relevant work.  20 C.F.R. § 404.1520(a)(iv).  If so, the claimant is not "disabled" under the Act.  *Id.*  The ALJ concluded that Morris' RFC permitted her to engage in her past relevant work.[2]  Accordingly, the ALJ concluded that Morris was not "disabled" under the Act at the relevant time.  Tr. at 21; *see* 20 C.F.R. § 404.1520(f).

### B.    Jurisdiction

The District Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Applicable Legal Standards

### A.    Standard for entitlement to social security benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a "disability," is eligible to receive SSI benefits.  42 U.S.C. § 1382(a)(1) & (2).  The term "disabled" or "disability" means the inability to "engage in any

---

[1]Tr. at 21.  The ALJ noted that "[t]he medical evidence indicates that the claimant has...a major depressive disorder; recurrent; severe; and generalized anxiety disorder" and concluded that these are "impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal...one of the listed impairments."  Tr. at 16.

[2] Transcript at 21.  Specifically, the ALJ found that "[t]he claimant has the following residual functional capacity: lift and/or carry up to 20lbs. occasionally and 10lbs frequently; occasionally climbing, stooping, kneeling, crouching and crawling; standing and or walking 6 hours out of an 8 hour workday with normal breaks; with an inability to work where balancing as a condition or employment, or at unprotected heights and around dangerous moving machinery; and an ability to perform work that is of a routine repetitive nature."  *Id.*
    Thus, the ALJ concluded that Morris' RFC did not preclude her from continuing her prior relevant work as a seamstress or stocker at a military base commissary.  *Id.*

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  *See id.* (providing the criteria for disabled status under the Act).

### B.    Standard of review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

4

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173.  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Id.* Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.). *Martinez*, 64 F.3d at 174. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

## III. <u>Discussion</u>

### A.      Morris' allegations of error

Morris' Complaint alleges that the conclusions and findings of fact made by the Commissioner are not supported by substantial evidence and contrary to law and regulation. Specifically, she argues that the ALJ erred in determining that she was not under a disability as defined by the Act through the date of the decision and therefore, not eligible for SSI benefits.  In particular, Morris contends that the ALJ committed reversible error by: (1) failing to comply with the evaluation technique required by 20 C.F.R. § 404.1520a for analyzing mental impairments; (2) improperly evaluating the credibility of the claimant's own testimony; and (3) failing to include explicit reasons for rejecting the opinion of one of the claimant's treating physicians in the decision.

**B.      The ALJ failed to use the proper legal standard when evaluating Morris' mental impairments**

            **1)      Overview of federal regulations concerning evaluation of mental impairments—20 C.F.R. § 404.1520a**

The Court concludes that the ALJ failed to adequately comply with federal regulations when he evaluated Morris' mental impairments.   Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of the mental impairments of an adult claimant. 20 C.F.R. § 404.1520a(a).  This Court finds that the ALJ's application of 20 C.F.R. §§ 404.1520a(c), (d), and (e)(2) suffers from errors and omissions that require remand.

After the ALJ determines that the claimant suffers from a "medically determinable mental impairment," he must rate the degree of functional limitation resulting from the impairments in accordance with 20 C.F.R. § 404.1520a(c), record those findings in his opinion in accordance with 20 C.F.R. § 404.1520a(e)(2), and then determine the severity of the claimant's mental impairments in accordance with 20 C.F.R. § 404.1520a(d).

The regulations require the ALJ to "rate the degree of functional limitation resulting from the impairment" in four broad functional areas: (1) activities of daily living, (2) social functioning, (3) concentration and persistence or pace, and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).  The degree of limitation in the first three functional areas is rated on a five-point scale including: "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  The degree of the fourth functional area is rated on a four-point scale including: none, one, two, three, or four.  *Id.*

The regulations require the ALJ to make "specific findings as to the degree of limitation in each of the functional areas" and include them in their written decision.   20 C.F.R. §

404.1520a(e)(2).   These "specific findings" must describe "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."  20 C.F.R. § 404.1520a(e)(2).  The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas described in 20 C.F.R. § 404.1520a(c).

After the ALJ rates the degree of functional limitations resulting from a claimant's mental impairments, he will determine the severity of those impairments. 20 C.F.R. § 404.1520a(d).  The regulation contains a presumption that "if [the assessing physician] rate[s] the degree of [the claimant's] limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the Social Security Administration] will generally conclude that [the claimant's] impairment(s) is not severe."  20 C.F.R. § 404.1520a(d)(1).  However, this presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.*  If the ALJ concludes that a claimant's mental impairments are severe, he will then determine whether they meet or are equivalent in severity to a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2).  If the ALJ finds that the claimant's mental impairments do not meet or are not equivalent to a listed mental disorder, he will then assess the claimant's mental RFC. 20 C.F.R. § 404.1520a(d)(3). At this stage, the ALJ must directly compare the claimant's mental RFC will the mental demands of her previous work and make clear factual findings on that issue.  *See Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994).

> **2)   The ALJ did not make the specific factual findings required by 20 C.F.R. § 404.1520a(e)(2)**

In every case where an adult claimant makes a non-frivolous claim of mental impairment,

the ALJ is required to "rate the degree of functional limitation resulting from the impairment" in four broad functional areas previously mentioned.  The regulations require an ALJ to make "specific findings as to the degree of limitation in each of the functional areas" and include them in their written decision.  20 C.F.R. § 404.1520a(e)(2).  These "specific findings" must describe "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2).  Failure to make specific findings has resulted in remand in similar situations. *See, e.g., Kelly v. Charter*, 952 F. Supp. 419, 426 (W.D. Tex. 1996).

In *Kelly*, the plaintiff was denied SSI benefits and sought review of the ALJ's determination that she was not disabled.  952 F. Supp. at 421.  The regulations in force at the time required an ALJ to complete a Psychiatric Review Technique Form ("PRTF") if there was any credible evidence that the claimant suffered from a mental impairment. *Id.* at 426.  The PRTF report was the predecessor to the requirement that the ALJ include an analysis using the five-point limitation scale across the four functional areas of daily life set out in 20 C.F.R. § 404.1520a.

The ALJ in *Kelly* omitted the PRTF report without explanation.  952 F. Supp. at 426.  The Commissioner argued that, contrary to the language of the regulation, a PRTF report was only required if there was evidence of significant mental impairment. *Id.*  In essence, the Commissioner argued that the omission of the PRTF report was harmless error. *See id.*  The court disagreed, noting that there was evidence in the record supporting the claimant's claim of severe mental impairment. *Id.*  Thus, *Kelly* suggests that the failure of the ALJ to make the specific findings regarding the claimant's mental state as required by the regulations requires remand. *Id.*  ("Several appellate courts have held that the failure to complete a PRTF is grounds for reversal and remand . . . . While

8

the failure to prepare a PRTF can, under certain circumstances, constitute harmless error, this is not one of those cases. The record contains evidence of a severe mental impairment . . . . Therefore, the failure to prepare a PRTF requires reversal and remand").

In this case, the ALJ failed to include "the significant history, including examination and laboratory findings . . . that were considered in reaching a conclusion" regarding Morris' functional limitations as required by section (e)(2). The ALJ merely summarized the opinions of Dr. Chappuis and Dr. Boulos regarding Morris' degree of limitation in each of the four functional areas without explicitly adopting them.[3] Omission of these required findings cannot be harmless error because the ALJ ultimately concluded that Morris' mental impairments were "severe." Tr. at 21.

20 C.F.R. § 404.1520a(d)(1) dictates that when the claimant's limitations in four functional areas are rated as mild or none, as in Dr. Chappuis' and Dr. Boulos' opinion, the claimant's mental impairment is rebuttably presumed not to be severe. However, in this case the ALJ explicitly found that all of Morris' impairments, including her "major depressive disorder . . . and . . . generalized anxiety disorder," were "severe." Tr. at 21. Thus, while it initially appears that the ALJ implicitly adopted the opinions of Dr. Chappuis and Dr. Boulos, who stated Morris' mental impairments resulted in only "mild" functional limitations, this assumption lacks consistency. The ALJ either rejected the functionality opinions of Dr. Chappuis and Dr. Boulos and then failed to explain the rejection and include his own findings, or he accepted their opinions and then rejected the rebuttable

---

[3]The ALJ decision's only reference to the four functional areas or the degree of limitation scale was contained in the following statement:

> Regarding the claimant's functional limitations, Drs. Chappuis and Boulos opined that the claimant's affective disorder (depression) and anxiety-related disorder imposes only a mild restriction of activities of daily life, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. They also found no evidence of any episodes of decompensation secondary to the claimant's mental impairments.

Tr. at 19. Thus, the ALJ did not explicitly adopt the analysis of Dr. Chappuis and Dr. Boulos as his own findings.

presumption that Morris' mental impairments were not severe.  The fact that the ALJ failed to explicitly adopt the opinions of Dr. Chappuis and Dr. Boulos is significant because the ALJ's finding that Morris' major depressive disorder and generalized anxiety disorder were "severe" impairments conflicted with the functionality assessment of those two doctors.  On remand, the ALJ needs to explicitly state whether or not he adopted the functionality opinions of Dr. Chappuis and Dr. Boulos and include the significant history, including examination and laboratory findings, that he considered in reaching this conclusion.

> **3)**     **The ALJ did not make specific findings rebutting the presumption contained in 20 C.F.R. § 404.1520a(d)(1)**

Section (d) prescribes the manner in which the functional assessment outlined in section (c) is used to evaluate the severity of the claimant's mental impairment.  20 C.F.R. § 404.1520a(c)-(d).  Section (d)(1) contains a presumption that "if [the assessing physician] rate[s] the degree of [the claimant's] limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the Social Security Administration] will generally conclude that [the claimant's] impairment(s) is not severe."  20 C.F.R. § 404.1520a(d)(1).  However, this presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.*

Dr. Chappuis and Dr. Boulos rated Morris' functional limitations in each of the four areas as a result of her "major depressive disorder . . . and . . . generalized anxiety disorder" as "mild" and "none."  Tr. at 19.  However, the ALJ explicitly found that all of Morris' impairments, including her "major depressive disorder . . . and . . . generalized anxiety disorder," were "severe."  Tr. at 21. Considering the evidence in the record, it would have been appropriate for the ALJ to make factual

findings rebutting the presumption in (d)(1) and to conclude that Morris' mental impairments were "severe." *Id.* To do so, the ALJ would have needed to make findings that "indicate[] that there is more than a minimal limitation in [Morris'] ability to do basic work activities." *Id.* However, the ALJ did not explicitly reach this conclusion or provide any factual support for it. Even if the Court assumes that the ALJ implicitly adopted the functionality opinions of Dr. Chappuis and Dr. Boulos, the ALJ would still have needed to explain why he rejected the presumption in (d)(1) that Morris' mental impairments were not severe. This omission requires remand.

> **4)** **The ALJ's determination that Morris' mental impairment does not meet or exceed a listed disability is conclusory and does not satisfy the requirements of 20 C.F.R. § 404.1520a(d)(2)**

Section (d)(2) states that if the ALJ finds a claimant's mental impairments to be severe, he will then determine whether the impairments meet or are equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). Further, section (d)(2) requires the ALJ to "compare the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder . . . [and] record the presence or absence of the criteria . . . in the decision." 20 C.F.R. § 404.1520a(d)(2).

The ALJ's opinion does not compare Morris' medical findings to any of the criteria for any of the listed disabilities included in Appendix 1. Rather, the ALJ summarily concluded that Morris' "medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." Tr. at 21. Accordingly, the ALJ's failure to compare Morris' medical impairment to the criteria for any listed disorder as required by section (d)(2) requires remand.

5)      **The ALJ did not assess Morris' mental RFC as required by 20 C.F.R. §
404.1520a(d)(3)**

20 C.F.R. § 404.1520a(d)(3) states that "[i]f [the ALJ] finds that [the claimant has] a severe

mental  impairment(s) that neither meets nor is equivalent in severity to any listing, [the ALJ] will

then assess [the claimant's] residual functional capacity."  Considering that section 404.1520a is

titled "Evaluation of Mental Impairments," it is clear that subsection (d)(3) of that section is referring

to the claimant's *mental* RFC.  *See* 20 C.F.R. § 404.1520a (dealing only with the evaluation of

mental impairments).

The ALJ's gave the following assessment of Morris' RFC:

The claimant has the following residual functional capacity: lift and/or carry up to
20lbs. occasionally and 10lbs frequently; occasionally climbing, stooping, kneeling,
crouching and crawling; standing and or walking 6 hours out of an 8 hour workday
with normal breaks; with an inability to work where balancing as a condition or
employment, or at unprotected heights and around dangerous moving machinery; and
an ability to perform work that is of a routine repetitive nature.

Tr. at 21.  This assessment focuses entirely on Morris' physical limitations.  Although the limitation

described in the ALJ's final phrase—"an ability to perform work that is of a routine repetitive

nature"—could be construed as an assessment of Morris' mental limitations, the Court finds that the

ALJ did not adequately consider Morris' mental impairments when assessing her RFC.

The regulation and the case law require the ALJ to directly compare the claimant's mental

RFC with the mental demands of her previous work and make clear factual findings on that issue.

*See Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994) ("Here, the ALJ found that Latham had a

residual functional capacity for light and medium work . . . . The categories of light and medium are

generic. They also refer only to exertional capabilities and do not address mental or emotional

12

barriers to a return to previous employment. The ALJ concluded that Latham suffers from anxiety, depression and deficiencies in concentration and social functioning. Yet, he did not explain how these impairments do not prevent Latham from returning to his previous people-oriented employment. The judgment of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings").

Where the ALJ finds that a mental impairment is "severe," the mental RFC must specifically describe how these impairments do not prevent the claimant from continuing their previous employment. *See Latham*, 36 F.3d at 484. Having failed to properly assess Morris' mental RFC, the ALJ was unable to properly compare Morris' capacity to the demands of her previous work. Accordingly, this error requires remand with instructions to consider Morris' mental impairments when assessing her RFC.

**C.    Substantial evidence exists in the record to support the ALJ's determination regarding Morris' credibility**

The ALJ found Morris' subjective complaints to lack credibility because they were inconsistent with her mental and physical activities. Tr. at 17 & 19. In his analysis of Morris' credibility, the ALJ stated  "[t]he claimant alleges suffering from impaired concentration and memory but testified that she does drive and has [a] current driver's license . . . ." Tr. at 19. However, Morris in fact testified that she is unable to drive and had not driven in three years. Tr. at 32. Morris argues that because the ALJ made a mistake of fact regarding Morris' ability to drive that the credibility assessment was improper and should be reversed.

In addition, Morris alleges that the ALJ rejected Morris' testimony regarding the side effects of her medications. In particular, Morris testified that her "medications impair[] her concentration

and memory, and causes her to think slower than she used to." Tr. at 14.  Side effects caused by medications are relevant in a suit for benefits and may themselves contribute to a disability.  *See Loza v. Apfel,* 219 F.3d 378, 397 (5th Cir. 2000) (acknowledging that the side effects of medication may cause or contribute to a disabling impairment).

While it is true that credibility issues are for the Commissioner and not the courts to resolve,[4] it is also true that a credibility determination based entirely on mistaken facts is not supported by substantial evidence and is subject to reversal by this Court. *See Ripley*, 67 F.3d at 555 (5th Cir. 1995) (noting that an ALJ's findings of fact must by supported by substantial evidence); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3) (same).  However, the Court determines that the ALJ's credibility determination was supported by substantial evidence.

Although the ALJ listed one incorrect basis for his determination that Morris was not suffering from impaired concentration and memory, his finding is otherwise supported by the record. For example, the ALJ noted that Morris was able to actively participate in the administrative proceedings before the ALJ and was able to respond to a variety of questions posed to her in an appropriate manner.  Tr. at 19.  Further, the ALJ points out that Dr. Caballero noted that Morris did well listing presidents, was able to spell words forward and backward, and generally showed good memory and concentration.  Tr. at 19.  Therefore,  substantial evidence exists in the record to support the ALJ's credibility determination, including the weight given by the ALJ to Morris' testimony regarding side effects.

---

[4]*Martinez*, 64 F.3d at 174.

**D.      The ALJ's failure to explicitly state reasons for rejecting the opinion of Morris'
treating psychiatrist is grounds for remand**

**1)      The assessments contained in the record**

From November 1, 2001 through the date of the ALJ hearing, Morris' treating psychiatrist
was Dr. Bischoff of the Bluebonnet Trails Community MHMR center.  Tr. at 138-48 and 166-80.
Dr. Bischoff initially diagnosed Morris with a "major depressive disorder, recurrent, severe" and
"generalized anxiety disorder."  Tr. at 138.  On July 2, 2003, Dr. Bischoff noted continuation of the
anxiety and depressive disorders and further opined that the claimant was functioning at the Global
Assessment of Functioning ("GAF") of 40/45.  Tr. at 326.  The Diagnostic and Statistical Manual
of Mental Disorders Fourth Edition (DSM-IV) reports a GAF of 40/45 as representative of "serious
symptoms or any serious impairment in social, occupational or school functioning."

On September 11, 2002 a consultative psychiatric evaluation was performed by Dr. Patricia
Caballero, D.O., in which Morris was assessed to have a GAF of 55 which the DSM-IV reports is
representative of only "moderate symptoms or moderate difficulties in social, occupational or school
functioning."

Two additional state medical consulting experts evaluated the objective medical evidence
regarding Morris' psychiatric condition.  Dr. Chappuis and Dr. Boulos evaluated Morris' medical
record on November 8, 2002 and April 25, 2003, respectively.  They opined that Morris' depression
and anxiety-related disorders imposed only mild restrictions on her daily living activities, social
functioning and maintaining concentration.  Tr. at 229.   They also found no evidence of any
episodes of decompensation.  Tr. at 229.  Neither Dr. Chappuis nor Dr. Boulos personally examined
Morris in the course of their evaluation.

It is clear from the ALJ's decision that Dr. Bischoff's opinion was given little if any weight in the ALJ's determination. The Commissioner acknowledges that the ALJ implicitly rejected Dr. Bischoff's assessment. Commissioner's Brief at 9. However, the ALJ did not expressly include reasons for rejecting or affording little weight to Dr. Bischoff's assessment.

### 2)   The treating physician rule

It is well settled that "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 453 (citing *Legget v. Charter*, 67 F.3d 558, 566 (5th Cir. 1995)). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453. Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) relevant evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the doctor is a specialist in the area at issue; and (6) other relevant factors including understanding of the evidentiary requirements for disability programs. 20 C.F.R. § 404.1527(d)(2)-(6); *Newton*, 209 F.3d at 453.

The Fifth Circuit has held that "an ALJ is required to consider each of the section 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456. "[I]f an ALJ rejects the opinion of a treating physician, he must articulate specific reasons for doing so." *Kelly*, 952 F. Supp. at 426; *see Loza*, 219 F.3d at 395. It is the policy of the Commissioner to "[g]enerally . . . give more weight to opinions from [the

16

claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment."  20 C.F.R. § 416.927(d)(2).  Further, the regulations require the ALJ to " give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion."  20 C.F.R. § 416.927(d)(2).

In his decision, the ALJ referred to Dr. Bischoff's assessment that Morris had a GAF of 40/45.  Tr. at 16.  The ALJ also acknowledged that Morris had been receiving treatment from Dr. Bischoff for over four years.  *Id.*  Also, the ALJ noted that Dr. Bischoff had diagnosed Morris with a recurrent and severe major depressive disorder and anxiety symptoms, which had not been resolved through medication.  *Id.*  No other mention of Dr. Bischoff or his assessment is included in the decision.

In sum, no justification or explanation for why the ALJ afforded controlling weight to the opinions of two non-examining physicians over the assessment of Dr. Bischoff and no good cause for doing so is evident in the record.  On the contrary, the record reflects that Dr. Bischoff's assessment was more thorough, spanned a greater length of time, was based on first-hand knowledge, and was internally consistent.  The Court has discussed the credibility of Dr. Bischoff's assessment in order to demonstrate that the ALJ's omission was not harmless error. On remand, the ALJ might choose to explicitly reject the treating physician's opinion; however, he must give "good reasons" for doing so.

Dr. Bischoff's assessment of the nature and severity of Morris' anxiety and depression were rejected by the ALJ without the required analysis. *Newton*, 209 F.3d at 453.  Rejection of a treating physician's assessment without conducting this analysis requires remand.  *Id.*

17

### 3)      The failure to properly analyze the assessment of a treating physician is not harmless error

The Commissioner argues that the failure of the ALJ to provide an explanation for his implicit rejection of Dr. Bischoff's opinion regarding the severity and nature of Morris' mental condition was harmless error because the evidence in the record demonstrates that Morris' mental impairments were not disabling.  Commissioner's Brief at 9.  As the Commissioner points out, the Fifth Circuit has noted that "[p]rocedural perfection in administrative proceedings is not required. This Court will not vacate a judgement unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Thus, the Commissioner argues that had the ALJ properly analyzed Dr. Bischoff's assessment, his ultimate decision would remain the same and Morris would have been denied benefits nonetheless.

Contrary to the Commissioner's argument, the record reflects that Dr. Bischoff's assessment favors Morris' claim and conflicts with that of Dr. Chappuis and Dr. Boulos. Tr. at 139-48.  Without the ability to review the analysis prescribed in the regulations, it is impossible for this Court to know whether the ALJ used a proper legal standard to disregard the assessment of Dr. Bischoff.  Dr. Bischoff's assessment goes straight to the heart of Morris' claim and contradicts the ultimate findings of the ALJ in this case.  Therefore, the failure to include an explanation for disregarding Dr. Bischoff's findings, including his GAF assessment, has a direct affect on Morris' substantial rights and is not harmless error.

In reviewing an appeal from the denial of Social Security benefits, its is not the responsibility of this Court to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Ripley*, 67 F.3d at 555; *Villa*, 895 F.2d at 1021.  However, it is the responsibility of

18

this Court to ensure that the record is properly developed at the administrative level. Without a fully and properly developed record, it is impossible for the Court to determine whether the ALJ's ultimate finding was reached pursuant to the proper legal standards and supported by substantial evidence in the record. The Court concludes that the ALJ's failure to properly analyze the assessment of the treating physician is not harmless error.

## IV. <u>Conclusion</u>

The decision of the Commissioner is REVERSED and Plaintiff's claim for benefits is REMANDED to the Commissioner with instructions to (1) address the weight to be given to the assessment of Dr. Bischoff, Plaintiff's treating psychiatrist; (2) rate the degree of functional limitation resulting from Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a(c); (3) record and support those functional limitation findings in accordance with 20 C.F.R. § 404.1520a(e)(2); and (4) rate the severity of Plaintiff's mental impairments, including if necessary her mental residual functioning capacity ("RFC"), in accordance with 20 C.F.R. § 404.1520a(d). Each party shall bear its own costs. The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 7th day of February, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE